## NEWPORT.

GEORGE BEAKHUST *et ux. vs.* HILTON CRUMBY *et ux.*

Where a parent conveys land to a child by a deed expressed to be for a money consideration, it does not follow that because no consideration in fact passed at the time of the conveyance it is a deed of gift within the meaning of Pub. Stat. R. I. cap. 187, § 20, of advancement.

A mother conveyed land to her son by a deed dated August 25, 1883, expressed to be in consideration of $3500. January 28, 1884, other land was conveyed to the mother and son, the purchase money for which was paid out of money deposited in the name of the mother. At the time of the conveyances the son had worked steadily at his trade and earned upwards of two dollars a day when he could obtain work, for a period of seventeen or eighteen years after becoming of age, and without remuneration except his maintenance, had turned over his earnings to his mother, and had besides done considerable work in caring for, repairing and improving her property. The mother died July 9, 1892.

*Held*, that the conveyances are not to be deemed as advancements to the son, but rather as having been made to remunerate the son for benefits received from him.

BILL IN EQUITY for partition. Heard on pleadings and proofs.

*Providence, July* 30, 1894. MATTESON, C. J. This is a bill for partition. After the filing of the bill and before it was answered, the respondent Hilton Crumby died, on, to wit, July 3, 1893, leaving a last will and testament, duly admitted to probate, in which he gave all his estate to his widow Emma Crumby, the other respondent. The bill was subsequently amended by setting forth the decease of Hilton Crumby and by making it a bill against Emma Crumby alone.

The complainant Elizabeth Beakhust and Hilton Crumby

were the children and heirs at law of Mary Crumby, late of Newport, deceased, who died intestate on July 9, 1892.

The complainants claim that the estates in the lands of which partition is sought, conveyed to Hilton Crumby by deed from Mary Crumby, dated August 25, 1883, and a deed from John Oman and Lucy Oman to him and Mary Crumby, dated January 28, 1884, are to be regarded in making the partition as advancements to Hilton from Mary : the first, because the deed by which it was conveyed was a deed of gift, and, consequently, under Pub. Stat. R. I. cap. 187, § 20, an advancement. The section is as follows : "If real estate shall be conveyed by deed of gift, or personal estate shall be delivered to a child or grandchild and charged, or a memorandum made thereof in writing by the intestate or by his order, or shall be delivered expressly for that purpose in the presence of two witnesses, who were desired to take notice thereof, the same shall be deemed an advancement to such child, to the value of such real or personal estate." The estate conveyed in the second deed is claimed to have been an advancement because the purchase money was paid out of moneys which had been deposited and stood at the time in the name of Mary Crumby.

We do not think that the estates so conveyed are to be regarded as advancements. The deed from Mary Crumby to Hilton Crumby does not purport to be a deed of gift, but is expressed to be in consideration of the payment by Hilton to Mary of $3500, which was approximately, we presume, the value of the interest conveyed. The presumption from such a deed is, in the absence of proof to the contrary, that it was made for a valuable consideration, rather than as a gift or as provision by way of advancement for the benefit of the grantee. The complainants contend that as it is admitted in the answer that no consideration passed at the time of the conveyance, it must be regarded as a deed of gift within the meaning of the statute. We do not think that it necessarily follows that because no consideration passed at the time of the conveyance it must be regarded as a deed of gift within the meaning of the statute.

Mary Crumby and Hilton Crumby having both deceased, the condition of affairs which led to the conveyances can only be ascertained from the facts proved by the testimony of others. The evidence shows that Hilton at the time of his death was forty-eight or forty-nine years of age; that early in life he learned the trade of a carpenter; that he was of industrious habits, working whenever work was obtainable, and when not employed elsewhere caring for and repairing and improving the property in suit; that he had average skill in his calling as a carpenter and earned from two dollars to two dollars and a half a day; that he was frugal in his expenditures; that after attaining his majority, as well as before, and down to the time of his mother's death, he turned over his earnings to her which were used by her or deposited by her with her own moneys in the savings bank. It thus appears that at the time of the conveyances in question, Hilton Crumby, who had worked steadily at his trade as a carpenter and had earned upwards of two dollars a day during such portions of the time as he was able to obtain work, for a period of seventeen or eighteen years after becoming of age, and without remuneration except his maintenance, had turned over his earnings to his mother and had besides done considerable work in caring for, repairing and improving her property. We think that it is not only fairly inferable, but it is highly probable, from this state of facts, that Mrs. Crumby may have regarded herself as in some sense a custodian, or trustee for her son of the moneys she had thus received, or that, at any rate, she felt that it was no more than just that she should remunerate him for the benefits she had received from him, and that she may have made her own conveyance and took that from the Omans to her son as well as to herself in discharge of the obligations which she felt resting on her towards her son. *Murrel* v. *Murrel*, 2 Strob. Eq. 148, 49 Amer. Dec. 664, was a case in which lands had been conveyed by a father to his two eldest sons as a remuneration for labor performed for him by them *while minors,* when he was very poor, and for their assistance in laying the foundation of his subsequent

fortune and in fulfillment of promises held out to them as inducement to their great exertions in his behalf. It was held that though a father is entitled to the services of his children while they are under age, he may waive that right and make their services the consideration of a contract or promise and may give property, *bonâ fide*, in performance of such obligation of justice without its being subject to any claim on the part of other children to consider it in the light of an advancement, and that lands so conveyed were. not to be deemed advancements within the meaning of the statute then in force relating to advancements. The chancellor uses this language in his opinion : ''They were not *advanced* (in the sense in which the statute uses the word) by these conveyances, although the lands were *given* to them by their father. . . . . Whatever may be the accurate definition of an advancement (and it is not easy to frame one) these gifts, standing upon this consideration, do not fall within it. I suppose an advancement must stand clear of any such consideration. It may, and I suppose always does, betoken the affection borne to the child advanced. That is the motive. But here the motive was not love, but justice. The act was not a gratuity, but a voluntary compensation ; 'it was not of grace but of debt.'" The case at bar is analogous to that of *Murrel* v. *Murrel*, for though there is no express declaration or promise of remuneration to her son shown on the part of Mrs. Crumby, which ·could hardly be expected, since both she and her son are dead and the conveyances were made upwards of ten years prior to the filing of the bill, it is scarcely conceivable that the son should have gone on year after year turning over his earnings to his mother and working on the property, without some understanding, express or implied, that he was at some time or in some manner, to be compensated, or that his mother could have received his earnings and the benefit of his labor without feeling that justice required her to make compensation. By doing justice to her son, the mother did no injustice to her daughter, who as heir at law with her brother is entitled

to her share of the property which justly belonged to the mother.

If the conveyances were made as they were from a sense of justice or in pursuance of some promise or declaration on the part of Mary Crumby to Hilton Crumby to remunerate him, as we think is more reasonable and probable than that they were mere gifts or by way of advancements, then under the authority of *Murrel* v. *Murrel, supra,* they are not to be deemed advancements in making the partition. We so find and hold. A decree of partition may be entered in conformity to the views herein expressed.

STINESS, J., non-concurring in finding of fact.

The complainants then filed a petition for a reargument.

*September* 28, 1894. TILLINGHAST, J. The complainants move for a reargument of this case on the grounds, *first,* that the court has erred in its conclusions as to the facts relating thereto, and, *second,* that the complainants' counsel did not have sufficient time at the former hearing properly to present their case to the court.

As to our conclusion of the facts in the case, it was arrived at after long and patient study and consideration of all the testimony submitted, (the same comprising 345 pages of type written matter), together with a consideration of the full and well arranged briefs of the respective counsel in the case. It is a case which depends entirely upon the testimony, much of which is more or less conflicting; and the very fact that the court itself was divided in opinion as to the effect thereof shows that it is one in which different minds may fairly reach different conclusions. A re-examination of the grounds upon which our decision was based, taken in connection with the criticism of plaintiffs' counsel upon the decision, fails to satisfy us that we were wrong therein. We think that the evidence taken as a whole does show that an adequate moral consideration for the conveyance in question did exist, and also that it was recognized by Mary Crumby in connection with the making thereof. That such consideration existed is abundantly shown by the proof that practically all of the earnings of Hilton Crumby for seventeen years or more went

into his mother's hands, and were used by her as she saw fit, and by the further proof of the services rendered by him to his mother in improving and taking care of her property, he simply receiving from her during all of this time, his bare living in return therefor.    Nor was the total amount earned by him during all of these years inconsiderable, as persistently claimed by complainants' counsel.    For, while there is but little direct proof of actual cash payments made to him by his employers, a fact upon which over-much stress is laid by counsel, there is most satisfactory proof that he worked as continuously and earned as much as ordinary men of his craft ; and it is certainly fair to infer that he received the wages of his labor.    That Mary Crumby recognized the fact that she was morally indebted to her son Hilton, that he had fairly earned the property in question, and that the conveyance thereof to him was not made merely on account of love and affection and was not intended as an advancement, is fairly to be inferred from her conduct taken in connection with the various statements made by her to several of the witnesses called by the respondents.    The deed itself from Mary to Hilton Crumby, shows *prima facie* that the conveyance was not made by way of advancement, but for a valuable consideration, and all of the testimony which has any bearing upon that branch of the case, tends to show the same thing.    And although no money actually passed from Hilton to his mother at the time of the conveyance, yet it sufficiently appears that the property conveyed to him represented in her estimation the product of his labor and justly belonged to him.

But it is urged that to allow the conveyance to Hilton Crumby to operate as an ordinary deed for a valuable consideration will result in an unequal and hence inequitable distribution of the property of Mary Crumby amongst her children ; and furthermore, that whatever moral consideration existed in favor of Hilton Crumby in connection with, and as the moving cause for, the making of the said conveyances to him, also existed in a stronger degree in favor of his sister Mrs. Beakhust.    It is true that in determining whether

or not a certain transaction between a parent and child is an advancement, the maxim of equality and that each and every child has an equal moral claim on his property at his death, must always be borne in mind ; that, as said by Thornton on Gifts & Advancements, 509, "Inequality is not to be presumed, nor favoritism nor preference for one child to the injury of another." But this doctrine in nowise militates against the right of the parent to recognize the fact that by reason of longer and more valuable services rendered by one child than by another, the former is morally entitled to be compensated therefor, and to render such an equivalent as he may see fit. Indeed, such a transaction is not only not in conflict with the rule above stated, but on the contrary directly tends to promote the same. As to the contention that Mrs. Crumby was under as strong and even stronger moral obligation to make the conveyance in question to Elizabeth as to Hilton, or in other words, that she earned as much of the property owned by the mother as he, we have only to say that the proof submitted does not sustain it. Elizabeth was married in 1872 when at the age of twenty-six, and of course ceased from that time to turn over her earnings to the mother, while Hilton continued to turn over his until 1888 at least, when he also got married. The deed from Mary to Hilton was not made until August, 1883, while that from the Omans to Mary and Hilton was not made until 1884, which was twelve years after Elizabeth had ceased to turn over her earnings to her mother. Hilton must therefore have contributed much more to the common fund, if such it may be called, at the time of said conveyances, than his sister, and a moral obligation was thereby created on the part of the mother to compensate him for this excess. That she recognized both the fact and the obligation arising therefrom and acted thereon, appears to us to be fairly shown in evidence.

The falling off in the savings bank deposits of Mrs. Crumby after the daughter left home is a fact upon which much stress is laid by complainants' counsel as showing that it was largely by her earnings that said deposits were made.

But the proof shows that another cause also existed for said falling off, namely, that soon after the daughter left home, the mother by reason of failing health was able to work only a small portion of the time, and then simply as a spare hand in taking the place of other operatives in the mill in case of sickness and the like. It also appears that quite a portion of Hilton's time was required in repairing and taking care of his mother's real estate which evidently prevented him also from contributing as much to said deposits as he otherwise would have done.

As to the second ground upon which a reargument is asked, namely, that sufficient time was not allowed by the court to the complainants' counsel to present their case fully, we fail to see that there is any reason for such claim. The case occupied considerable time, (three hours or more as we recollect it), it was carefully and skilfully argued by counsel and the points were also well presented in their printed brief. It being a case which depends entirely upon the evidence as reported, and this, as before stated, having been carefully considered by us after a full hearing of the case, we do not think that the complainants are entitled to a reargument.

*Motion for reargument denied.*

*Darius Baker* & *Charles Acton Ives*, for complainants.

*William P. Sheffield, Jun.,* & *Michael W. Callaghan*, for respondents.